KARIN J. IMMERGUT, OSB #96314
United States Attorney
District of Oregon
DWIGHT C. HOLTON VSB #40767
dwight.holton@usdoj.gov
Assistant United States Attorney
1000 SW Third Avenue, Suite 600
Portland, OR 97204-2902
Telephone: (503) 727-1000
Facsimile: (503) 727-1117
    Attorney for United States

UNITED STATES DISTRICT COURT
DISTRICT OF OREGON

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 06- 313 (MO) |
| v. | **PLEA AGREEMENT** |
| ISIS SOCIETY FOR INSPIRATIONAL STUDIES, INC. a/k/a "Temple of Isis," and "Isis Oasis Sanctuary" | 18 U.S.C. § 371 and 16 U.S.C. § 1538 |
| Defendant. | |

    The United States of America, by Karin J. Immergut, through Assistant United States Attorney Dwight C. Holton, and defendant **ISIS SOCIETY FOR INSPIRATIONAL STUDIES, INC.**, a California corporation also known as the "Temple of Isis" and "Isis Oasis Sanctuary" (**"TEMPLE OF ISIS"**) (also the "defendant"), by and through, and approved by its attorneys, James Clark and Omar Figueroa, hereby enter into the following Agreement, pursuant to Federal Rule of Criminal Procedure 11.

I.     **The Legal Background:**

1.     Under the Endangered Species Act ("ESA"), certain wildlife species are protected and listed as either threatened or endangered. A species listed as threatened means any species which is likely to become an endangered species within the foreseeable future throughout all or a significant portion of its range. A species listed as endangered means any species which is in danger of extinction throughout all or a significant portion of its range. 16 U.S.C. §§ 1531 - 1544. The list of endangered species can found at 50 C.F.R. Part 17.

2.     Ocelots, small leopard-like animals that historically range from the Southwestern United States to Central and South America, are listed as "endangered" throughout their range.

3.     The ESA makes it generally unlawful for any person to sell, offer for sale, deliver, receive, carry, transport, or ship any endangered wildlife species in interstate commerce. 16 U.S.C. § 1538 (a)(1). The ESA and implementing regulations establish a permitting system whereby covered wildlife can be sold, etc, if the permit requirements are met. Accordingly, a person selling or offering to sell an endangered species must have an Endangered Species Permit for <u>each</u> otherwise prohibited transaction involving Ocelots which deals with interstate or foreign commerce, import, and export.[1]

---

[1]     The purpose of the blanket prohibition on the sale of endangered species and pelts (and other parts) is to end the commercialization of endangered species. When endangered wildlife are commercialized – that is, when animals or animal parts are sold – the commercialization encourages the development of a blackmarket for the animals and parts, which in turn creates further incentives for poachers to illegally take endangered species from their habitat. Poaching has already decimated certain species and threatens to do the same to many others. Accordingly, the ESA seeks to limit commercialization by creating a nearly total ban on the sale and offer for sale of endangered species and animal parts from endangered

      4.      Title 18, United States Code, Section 371 makes it illegal to conspire to violate the ESA.

## II.  The Charges:

      5.      Defendant **TEMPLE OF ISIS** is charged with conspiring to violate the Endangered Species Act by agreeing with others to sell and offer to sell endangered animals, namely ocelots, in interstate commerce, in violation of Title 18, United States Code, Section 371, and Title 16, United States Codes, Section 1538(f).

## III.  Elements of the Offense:

      6.      The government must prove

> (a) that there was agreement between two or more persons to commit a crime, in this case, selling and offering for sale an endangered animal, in interstate commerce;
>
> (c) defendant TEMPLE OF ISIS became a member of the conspiracy knowing at least one of its objects and intending the help accomplish it; and
>
> (c) defendant performed at least one overt act in furtherance of the conspiracy

## IV.  Stipulated Facts Supporting Guilt

      7.      Defendant stipulates and agrees to the following facts:

> (a) Defendant maintains a facility located in Geyserville, California, where defendant maintains live wildlife, a lodge, and a temple;
>
> (b) Defendant is a non profit organization, the "Isis Society for Inspirational Studies" and is also know as the "Temple of Isis," the "Isis Oasis Sanctuary," (the "Temple of Isis" is a separately-incorporated business, but is operated interchangeably with the defendant);.
>
> (c) Among other things, defendant maintains and has bred ocelots at this

---

species. Use of total bans has proven tremendously successful at wildlife restoration -- for example, in the case of ivory trade, the total ban on sale of ivory has dramatically reduced poaching of elephants in Africa.

facility;

(d) During the period August 1999 through November 2004, defendant sold at least ten ocelots to various buyers, some in California and others located throughout the United States;[2]

(e) Defendant's interstate sale of ocelots included

    (i) one sold to Purchaser A in Oregon in approximately August 1999;

    (ii) one sold to Purchaser B in Minnesota in March 2000;

    (iii) one sold to Purchaser C in Florida in June 2002;

    (iv) two sold to Purchaser D in Texas in August 2003;

    (v) one sold to Purchaser D in Oregon in February 2004;

(f) In an effort to conceal the illegal nature of its interstate ocelot sales, employees and agents of defendant conspired with others, including those purchasing ocelots, to mischaracterize the sales as "donations" rather than *quid pro quo* sales;

(g) Specifically, defendant and others agreed to mischaracterize interstate transfers of ocelots to purchasers as "donations," and to mischaracterize payment from these purchasers as "contributions" to a tax deductible organization associated with the defendant, namely the **TEMPLE OF ISIS,** and to Isis Oasis Sanctuary; and

(h) Defendant, through its representative, Rev. Loreon Vigne, was not initially forthcoming, and did not fully cooperate with, United States Fish and Wildlife Service agents regarding the nature of the ocelot transfers at the heart of this investigation.

---

[2] Details of the sales are set forth in a letter by a Loreon Vigne, a representative of the defendant, which is attached and incorporated by reference.

*United States v. Temple of Isis*
Plea Agreement Page 4

V. **Penalties:**

    8.    The statute to which defendant **TEMPLE OF ISIS** is pleading guilty carries the following penalties:

        (a) <u>Probation</u>: maximum term of 5 years
            (18 U.S.C. § 3561(c)(2)

        (b) <u>Fine</u>:  maximum fine of $200,000
            (18 U.S.C. § 3571(c)(5)

        (c) <u>Special Assessment</u>: $125.00
            (18 U.S.C. § 3013)

VI. **Sentencing Agreement:**

    9.    Pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B), and in light of the defendant's acceptance of responsibility, the Office of the United States Attorney for the District of Oregon and the defendant **TEMPLE OF ISIS** agree to recommend that the Court impose the following sentence:

        a.    **Fine:** **TEMPLE OF ISIS** shall make a payment in the total amount of $60,000.  Payment of the fine shall be made prior to or at the time of sentencing.

        b.    **Probation:** **TEMPLE OF ISIS**, its successors and assigns shall be placed on probation for a period of two years.  As a condition of probation, agents of the United States Fish and Wildlife Service shall have right to enter and inspect any development, demolition or building project operated by defendant **TEMPLE OF ISIS** at any time without probable cause, so long as such entry does not unreasonably interfere with defendant's operations.

        c.    **Community Service:** As noted above, the parties agree that the defendant shall pay a total fine amount of $60,000.  The United States will petition the Court at the time of sentencing to order defendant to pay the total fine amount, $60,000,

in community service pursuant to USSG § 8B1.3 and in furtherance of the sentencing principles provided in 18 U.S.C. § 3553(a), for the purpose of funding projects for the benefit, preservation, and restoration of threatened and endangered species. Specifically, the United States expects to petition the Court to order the **TEMPLE OF ISIS** to make the community service payment to the Oregon Zoo for programs relating to threatened and endangered wildlife. Defendant **TEMPLE OF ISIS** will support the government's petition. Because the community service payments are designated as community service by an organization, defendant further agrees that it will not seek any reduction in their tax obligations as a result of these community service payments. In addition, since these payments constitute community service, defendant will not characterize, publicize or refer to these community service payments as voluntary donations or contributions.

        **d.**    **Reporting Requirement**: In order to ensure continued compliance with all laws governing handling of endangered species, defendant, together with its employees and agents, including but not limited to Loreon Vigne, agrees to notify a designee of the United States Fish and Wildlife Service upon the birth of any endangered species born by any animal own, controlled or boarded with the defendant, its employees and agent, or Loreon Vigne, for a period of 5 years following the date of this agreement.

## VII. Immunity From Prosecution

        10.    The government agrees that in return for the full cooperation of the defendant and compliance with terms set forth herein, the United States Attorneys Office for the District of Oregon will:

        (a)    Recommend a sentence as set forth in Paragraph VI of this agreement;

        (b)    Seek no further criminal charges against defendant, Loreon Vigne

    or any other employee or agent of the defendant regarding the heretofore disclosed illegal sales and offers for sale of endangered species; and

  (c) Seek no further criminal charges against defendant or its employees regarding the tax implications of the heretofore disclosed illegal sales and offers for sale of endangered species, it being understood that this does not in any way relieve the defendant or its employees of any tax liability or any civil or regulatory action to address any tax improprieties, if any.

  11. The government does not object to defendant, its affiliates, or the defendant's Secretary and Treasurer, Loreon Vigne continuing to possess and breed endangered animals at its facilities in Geyersville, CA; so long as (a) defendant and Ms. Vigne remain in full compliance with all applicable state and federal laws, including but not limited to the Endangered Species Act and the Lacey Act, (b) defendant and Ms. Vigne are always absolutely truthful and forthcoming in all dealings with any official involved in regulation of endangered species, and (c) defendant and Ms. Vigne remain in compliance with all terms of this agreement.

**VIII. Corporate Authorization:**

  12. Defendant **TEMPLE OF ISIS** will provide to the United States written evidence in the form of a notarized resolution of the governing body of the **TEMPLE OF ISIS** with appropriate seals, certifying that defendant is authorized to enter into and comply with all provisions of this agreement. The resolution shall further certify that the attorneys James Clark and Omar Figueroa are authorized to take these actions and that all corporate formalities required for such authorization, including, but not limited to, approval by the **TEMPLE OF ISIS** governing body, have been observed. **TEMPLE OF ISIS** agrees that it has authorized attorneys James Clark and Omar Figueroa to appear on behalf of defendant in the District of Oregon.

## IX.  Express Waiver of Right to Appeal Guilty Plea and Sentence:

13.  **TEMPLE OF ISIS** agrees that if the Court imposes the sentence recommended by the parties under this agreement, it waives its right to appeal its plea and the sentence, and waives its right to collaterally attack the conviction and sentence.

## X.  Completeness of Agreement:

14.  The parties agree that this plea agreement is the only agreement between the United States Attorney's Office for the District of Oregon and the **TEMPLE OF ISIS** concerning this matter.  This plea agreement supersedes all prior understandings, if any, whether written or oral, and cannot be modified other than in a written agreement that is signed by all parties.  No other promises or inducements have been or will be made to the

defendant by the parties to this agreement in connection with this case, nor have any predictions or threats been made in connection with this plea.

DATED this 3+h day of July, 2006.

KARIN J. IMMERGUT
United States Attorney
District of Oregon

by. DWIGHT C. HOLTON                           7/13/06
    Assistant United States Attorney           Date

ISIS SOCIETY FOR INSPIRATIONAL STUDIES

by:   James Clark                              7-15-06
      Attorney for Defendant                   Date

      Rev. Loreon Vigne                        7-27-06
      Loreon Vigne                             Date
      Secretary and Treasurer, ISIS

June 23, 2006

AUSA Dwight Holton
United States Attorney's Office
District of Oregon
1000 SW Third Ave., Ste. 600
Portland, OR 97204-2902
(503) 727-1000
FAX: (503) 727-1000

To AUSA Holton and to whom it may concern:

   In furtherance of the discussed negotiated resolution, I hereby proffer the following:
   The Isis Society for Inspirational Studies, through its representative, Rev. Loreon Vigne, agreed with various ocelot recipients to mis-characterize the ocelot transfers as donations to organizations including: Temple of Isis, and Isis Oasis Sanctuary instead of sales.
   The Isis Society for Inspirational Studies, through its representative, Rev. Loreon Vigne, was not initially forthcoming, and did not fully cooperate with United States Fish and Wildlife Service agents regarding the nature of the ocelot transfers, as indicated above.
   The following ocelot and hybrid kitten transfers for the past five years have been reconstructed to the best of my ability.

| | |
|---|---|
| 8/8/1999 | One ocelot kitten belonging to according to breeding agreement, was given to                        . |

1

**PROFFER INTENDED SOLELY FOR PURPOSES OF NEGOTIATED SETTLEMENT**
The above statements are made explicitly in furtherance of facilitating a negotiated settlement, and their use is subject to the limitations of Federal Rule of Criminal Procedure Rule 11(f) and Federal Rule of Evidence 410.

| Date | Description |
|---|---|
| 3/15/2000 | One ocelot kitten born to "Ankh" and "King Tut," was sold to _____ of Minnesota in exchange for the expected return of a female ocelot kitten. _____ never provided an ocelot, but his mother did provide $3000.00. |
| 8/6/2001 | One male ocelot kitten born of "Isis" and "King Tut" was sold to |
| 11/8/2001 | One "bobolot," a hybrid ocelot-bobcat mix, was sold for $5170.00 to _____ of |
| 5/11/2002 | One female ocelot kitten born of "Ankh" and "King Tut" was given to _____ This kitten had eye problems which required significant veterinary costs. No money was exchanged. |
| 6/17/2002 | One female ocelot kitten born of "Ramses" and "Nefertari" was sold to _____ for $3000.00. _____ obtained the kitten in California. As this ocelot kitten belonged to _____ pursuant to a breeding agreement, Rev. Vigne did not recall receiving any remuneration from _____ However, in preparing this accounting of ocelot transfers, Rev. Vigne discovered that _____ did purchase the feline. Records of this sale were maintained by Rev. Vigne's partner, _____. _____ has since passed away, but was doing all of the bookkeeping at the time while Rev. Vigne was laid up with a hip replacement. |
| 12/21/2002 | One male ocelot kitten born of "King Tut" and "Isis" was sold for $5000.00 to a licensed owner. |

2

**PROFFER INTENDED SOLELY FOR PURPOSES OF NEGOTIATED SETTLEMENT**
The above statements are made explicitly in furtherance of facilitating a negotiated settlement, and their use is subject to the limitations of Federal Rule of Criminal Procedure Rule 11(f) and Federal Rule of Evidence 410.

| | |
|---|---|
| 1/17/2003 | One male ocelot kitten born of "Isis" and "King Tut" was sold for $5000.00 to |
| 8/1/2003 | One female ocelot kitten born of "Osiris" and "Oasis" was given to                      so that she could attempt to breed ocelots. No money was exchanged. |
| 8/12/2003 | Two ocelot kittens, one born of "Osiris/Oasis" and one of "Isis/King Tut" were sold for $5000.00 to                                         who could provide a good environment and attempt to breed the cats. One of these cats died, and               replaced it with a cat from another source in Kentucky. Later, Ms.              sent Rev. Vigne a male serval. |
| 12/28/2003 | One male ocelot kitten born of "Ramses" and "Nefertari" was transferred to the                                       in exchange for birds and later a serval. No money was exchanged. |
| 2/15/2004 | One female ocelot kitten born of "Pharaoh" and "Lotus" was sold for $5000.00 to                       . This was the first seventh-generation captive-born ocelot born at Isis Oasis, and Rev. Vigne wanted it to be raised as a companion animal by               who is a long-time ocelot owner.               has made numerous donations to Isis Oasis to support the animals. |
| 6/11/2004 | One male ocelot kitten born of "Nefertari" and "Ramses" was sold to                                        Although this was one of               kittens, she agreed to accept a kitten from another bloodline instead.               paid $5000.00 for the kitten. |

3

**PROFFER INTENDED SOLELY FOR PURPOSES OF NEGOTIATED SETTLEMENT**
The above statements are made explicitly in furtherance of facilitating a negotiated settlement, and their use is subject to the limitations of Federal Rule of Criminal Procedure Rule 11(f) and Federal Rule of Evidence 410.

| | |
|---|---|
| 6/23/2004 | One male ocelot kitten born of "King Tut" and "Isis" was transferred to                        This kitten was given to           who may have subsequently transferred it to                      sent $500.00 for the transportation costs. |
| 11/17/2004 | One female ocelot kitten born of "Lotus" and "Pharaoh" was sold to                                                     paid $5500.00 for the kitten. |
| 11/17/2004 | One male ocelot kitten born of "Nefertari" and "Ramses" was sold to the           , to become an ambassador for the           purchased the kitten for $5000.00.           had previously purchased a serval from Ms. Vigne. |

This list contains an accurate and complete list of ocelot transfers.

Dated: June 23, 2006.            Sincerely,

<u>Rev-Loreon Vigne</u>
Reverend Loreon Vigne
On behalf of the
Isis Society for
Inspirational Studies

4

**PROFFER INTENDED SOLELY FOR PURPOSES OF NEGOTIATED SETTLEMENT**
The above statements are made explicitly in furtherance of facilitating a negotiated settlement, and their use is subject to the limitations of Federal Rule of Criminal Procedure Rule 11(f) and Federal Rule of Evidence 410.